# Patrick J. Joyce Esq.

Attorney at Law
70 Lafayette Street - 2nd Floor
New York, New York 10013
(212) 285-2299
FAX (212) 513-1989

New Jersey Office:
4 W. South Avenue
S. Orange, NJ 07079
(973) 324-2711

May 19, 2015

Honorable Laura Taylor Swain
United States District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10013

## FILE UNDER SEAL

Re:   USA v. David Kugel
10-Cr. 228(LTS)

Dear Judge Swain;

I am the attorney for David Kugel, the defendant in the above referenced matter. Mr. Kugel is scheduled to be sentenced before Your Honor on May 27, 2015. This letter is submitted, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, in an attempt to advise the Court of several matters which the defendant will raise at the time of sentencing, which hopefully will aid in the determination of an appropriate sentence. At the conclusion of the sentencing hearing I will request that the court sentence Mr. Kugel, as recommended by Probation, to a sentence of time served to be followed by a term of supervised release of two (2) years. Due to its contents I respectfully request that this letter be filed under seal.

## FACTS OF THE CASE

Mr. Kugel pled guilty on November 21, 2011, a relatively early stage of the investigation. At that time he agreed to cooperate in the investigation and to testify if necessary at trial. Mr. Kugel, as the Court is aware, testified for six days and was the first essential fact witness at the trial. He testified in an expert manner helping to reconstruct for the jury the length and breadth of the "Ponzi Scheme" even though it is conceded that Mr. Kugel never knew that people were being cheated out of money. This in no way minimizes Mr. Kugel's remorse and involvement in the criminality by his actions in providing historical data. In addition to Mr. Kugel testifying, he spent dozens of occasions in person and on the phone in aiding the investigation of this matter. The Government's 5K1 letter lays out the essential nature of Mr. Kugel's cooperation, his truthfulness and the substantial assistance which he tendered in this prosecution. As part of his efforts at redemption the defendant has voluntarily agreed to help the recovery of monies for the victims, including a recent meeting for 7 hours with attorneys and investigators working with Bankruptcy Trustee Picard.

## THE DEFENDANT REQUESTS THAT THE COURT CONSIDER A DOWNWARD DEPARTURE IN ITS CALCULATION OF AN APPROPRIATE GUIDELIN RANGE

The defendant respectfully requests a downward departure from the suggested guideline calculation. Mr. Kugel has provided substantial assistance to the Government. Under Guildeline §5K1.1 the court may consider the Government's motion to request that the court depart from the suggested guidelines. The Government is in the best position to address the factors states in §5K1.1(a). The defendant asserts, and the Government agreed, that his assistance was significant, truthful and complete, extensive and timely. For these reasons, Mr. Kugel requests that the court calculate a guideline range which considers his "substantial assitance".

## THE GUIDELINE CALCULATION AND ATTENDANT SENTENCE RANGE IS NOT BINDING ON THIS COURT

As the Court is fully aware the Supreme Court in United States v. Booker, 543 U.S. 220 (2005) overturned the mandatory nature of the Guidelines and replaced them with a mandatory statute, 18 USC § 3553.

The factors outlined in § 3553(a) require that a sentence be not greater than necessary to satisfy the need for just punishment, respect for the law, deterrence, prevention of further crimes, treatment and training. In light of these factors the defendant respectfully requests that a sentence of time served and probation under the law satisfies these requirements.

Section 3553(a) is referred to in Booker and much post-Booker case law as containing various "factors" – one of which is the guidelines – that must now be considered in determining a sentence. This is a misleading. oversimplification. Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate. The sentencing mandate contains a limiting principle favorable to defendants and is the overriding principle that limits the sentence a court may impose.

The overriding principle and basic mandate of Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in Section 3553(a) (2). The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The Parsimony Provision is not just another "factor" to be considered along with the others set forth in Section 3553(a) (discussed below) – it sets an independent limit on the sentence a court may impose. See United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989). Since § 3553(a) requires a sentence to be no greater than necessary to meet the purposes of sentencing, imposition of sentence greater than necessary to meet those purposes is reversible, even if within the suggested guideline range. Id.

It should be noted at the outset that the Guidelines are flawed in their construction by the fact that the Guideline range is constructed almost solely of *aggravating* factors. The only mitigating factors are acceptance of responsibility points and role in the offense. Mitigating factors are not part of the Guideline range and the policy statements attached to the Guidelines highly discourage the use of mitigating factors as a basis for *departure*. Thus, since the Supreme Court's decision in Booker the case law is clear that although a Guideline calculation is a necessary beginning point of any sentence consideration, it should not be the final arbiter of what a reasonable and just sentence should be. The case law has also made it clear that a Court can deviate from the Guidelines if it feels that they require a

3

sentence that is greater than necessary to satisfy the factors of § 3553. The Supreme Court has urged each sentencing Court to consider **all mitigating** factors and to reject policy statements of the Guidelines that restrict the use of mitigating factors. See, United States v. Rita, 551 U.S. 338 (2007) and United States v. Gall, 552 U.S. at 50 n.6, 58-60 (2007). Gall at 59 n.11 requires that a sentencing Court consider all "kinds of sentences available" under § 3553 even if the Guidelines only recommend a prison sentence. In fact Courts are now invited to consider arguments that the applicable guidelines fail properly to reflect § 3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless of the Guidelines. Rita, 127 S. Ct. at 2465. Courts "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," Kimbrough, 128 S. Ct. at 570 (internal quotation marks omitted), and when they do, the courts of appeals may not "grant greater fact-finding leeway to [the Commission] than to [the] district judge." Rita, 127 S. Ct. at 2463.

In Kimbrough v. U.S., 128 S.Ct.558 (2007), the court affirmed a District Court's decision to deviate from the Guideline's 100-1 "cocaine base" ratio in sentencing a defendant. In Gall v. United States 128 S. Ct. 586 (2007) the Court ruled that a District Court's non-guideline sentence did not involve an abuse of discretion and therefore could not be invalidated by Appellate Review. The common thread running through these cases is that a District Court is bound only by the factors contained in 18 USC § 3553. In admonishing the appellate court in Gall, the Court stated, "But it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse of discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." United States v. Gall, supra at *12.

## 18 USC 3553 FACTORS

In determining the sentence minimally sufficient to comply with Section 3553(a), the court must consider several factors contained therein. Some of these factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed" (4 -5) "the range established by the guidelines and any

4

pertinent policy statements (6) the need to avoid unwarranted sentencing disparity. 18 U.S.C. § 3553(a) (1), (2), (4), (5) (7).

Nature and Circumstances of the Offense and the History of the Defendant

When the Court considers the nature and circumstances of the offense and the history and characteristics of Mr. Kugel it will become clear the requested sentence of time served is appropriate.  The PSR report has detailed the numerous factors which indicate why Mr. Kugel should be treated with leniency.  The report documents the work and educational history of Mr. Kugel as well as the family support network which he enjoys. (PSR Paragraphs 90-95).

Portions of the probation report are extremely instructive when the court considers Mr. Kugel's character.  Mr. Kugel has maintained a good relationship with his family members, and he is described as being "the sweetest, kindest person" by his wife of 43 years, Phyllis Kugel. (PSR Paragraph 95).

The report notes the significant volunteer effort undertaken by Mr. Kugel, which has resulted in his now being a paid employee of the Fortune Society. (PSR Paragraph 109).  His supervisor reveals that he is an excellent employee who is a "very conscientious and caring individual who has been generous with his time". (PSR Paragraph 109). In addition to his paid duties, Mr. Kugel also volunteers as a Teacher/Math tutor for GED preparation.

Attached to this submission are letters of support from family members, friends and community members.  The authors of these letters of support portray a man who has always been an ardent benefactor, who continues to work hard, who shows love and affection to his family and who must now confront the consequences of this major error in judgment.  All character letters indicate first and foremost that Mr. Kugel has been and will continue to be a devoted and caring family member.  The lives of his wife, children, mother, and those in his extended circle have been completely disrupted by this pending case.  Mr. Kugel has continually stated that the pain he has caused these family members is a consequence of his actions which he will always regret.  His goal in life is to devote himself to his family's well being.

The circumstances of this offense also lend credence to the request for leniency. Mr. Kugel's involvement which ended in the early 90's, consisted of providing historical information which was "ministerial" in nature without knowledge that people were being cheated out of money. His feelings of guilt upon learning that people were cheated out of money are indescribable. Mr. Kugel's connection with the investment advisory business was by providing data from the Wall Street Journal. All the money he earned in his 40 year career was earned legitimately as a trader and not through the separate investment advisory business.



## The Need for the Sentence Imposed

In addressing this subsection, the Court should consider, among other things, the effect the sentence will have upon deterrence, and prevention of further crimes. The defendant respectfully suggests that when these factors are considered the requested sentence becomes obviously appropriate.

Section 3553 (a) requires a sentencing Court to consider deterrence, both general and specific. As to specific deterrence, this conviction has affected Mr. Kugel and has seared into his mind the quest to live a law abiding life. However, I would add to those facts the analysis provided by some empirical studies that have been conducted by specialists in this area

that support the proposition that Mr. Kugel will lead a law abiding life. The studies have considered many factors in determining which defendants are most likely to become recidivists. See, USSC, *Measuring* Recidivism (2004).

One factor to be considered is age. The studies have demonstrated that recidivism declines dramatically with age. While a person under 21 has a 35.5% chance of committing another crime, this percentage drops precipitously for a person of Mr. Kugel's age. (69)

Another factor considered is employment. It has been demonstrated that if a person has maintained stable employment in the past, the recidivism rate drastically lowers. Mr. Kugel has maintained steady employment throughout his life and is considered an "excellent employee" by his current employer. Thus, this factor points to a lower chance of future illegal behavior.

The next factor considered is education. The studies have demonstrated that the more education one has the lower the chance he has of becoming a recidivist. Here, Mr. Kugel who is a college graduate is a lower risk to recidivate.

Researchers have also considered family connections as an important factor when measuring the chance of repeat convictions. The studies have observed that if a person has been married in the past and has close ties to his present family members the chance of recidivism is lowered. Here, Mr. Kugel is married to a woman who refers to him as "a good person and wonderful husband, father and grandfather." (PSR Paragraph 95). His wife, children, mother, and his siblings, have all been very supportive of Mr. Kugel throughout this ordeal. This would indicate that Mr. Kugel is not regarded as a high risk to become a recidivist.

A final factor is whether the offender is charged with a violent or non-violent crime. The studies have proven that a person sentenced under the fraud and larceny Guidelines are the least likely to recidivate. Here, there are no violent acts associated with Mr. Kugel thus; he is not considered a high risk to recidivate.

Therefore, when these factors are considered in their entirety it is clear that Mr. Kugel falls into the category of individuals who are least likely to recidivate.    Therefore, not only does his personal history demonstrate a low chance of recidivism on his part, the empirical studies conducted by the experts in the field indicate that he has a very low chance to commit new crimes.

Indeed, while many believe that the higher the sentence, the greater the effect in deterring others, the scientific research shows no relationship between sentence length and deterrence.  The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one.  But the question for this Court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime.  Here the findings are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence.  Current empirical research on general deterrence shows that while **certainty** of punishment has a deterrent effect, "increases in severity of punishments **do not** yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006)

The fact that "general deterrence" is not considered by people considering committing crimes is best demonstrated by the studies of white-collar crimes.  For purposes of argument it can be rationally presumed that the white-collar criminal is the most rational of criminal offenders.  That if any criminal offenders were going to consider all of the pluses and minuses of committing a criminal act, a white collar criminal would be most likely to indulge in that type of thinking.  However, the studies show that there is no difference in the deterrence factor between probation and imprisonment for white-collar offenders. That is, offenders given terms of probation were no more or less likely to reoffend than those given prison sentences. See, David Weisburd et.al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995).

The rationale behind this theory lies in the fact   that potential criminals are not generally aware of penalties for their prospective crimes,

do not believe they will be apprehended and convicted, and simply do not
consider sentence consequences in the manner one might expect of rational
decision makers. Tonry, *Purposes and Functions of Sentencing, supra*, at
28-29. A recent review of this issue concluded: "There is generally no
significant association between perceptions of punishment levels and actual
levels . . . implying that increases in punishment levels do not routinely
reduce crime through general deterrence mechanisms." Gary Kleck, et al,
*The Missing Link in General Deterrence Theory*, 43 Criminology 623
(2005).

The Commission itself has found that "[t]here is no correlation between
recidivism and guidelines' offense level. Whether an offender has a low or
high guideline offense level, recidivism rates are similar. While surprising at
first glance, this finding should be expected. The Guidelines' offense level is
not intended or designed to predict recidivism." See USSC, Measuring
Recidivism at http://www.ussc.gov/publicat/Recidivism_General.pdf. State
law enforcement officials at the Commission's recent hearing confirmed the
research results. Chief John Timoney of the Miami Police Department
testified that the deterrent effect of the federal system is not its high sentences
but the certainty that there will be punishment. Mr. Kugel will express to this
Court in his statement, that he has learned the lesson that society does not
accept fraudulent behavior and if he ever involves himself in illegal activity
again, he will be excluded from society. The specter of prison time has had its
effect on Mr. Kugel. He knows if he returns to criminal conduct his sentence
will be severe and he is determined to not let that occur.

When considered under these parameters the defendant respectfully
submits that the sentence of Time Served followed by Supervised Release
sufficiently meets both the requirements of specific and general deterrence.
It cannot be said that Mr. Kugel has not been punished for his acts. All of
the following points have been confirmed by the Government, Probation or
has been witnessed by the court and are included in my conclusion.

I would ask the Court to sentence Mr. Kugel to Time Served and
Supervised Release consistent with the following factors which have been
discussed in this submission:

1. The sincere remorse and regret which the defendant feels
   because of his illegal activities.
2. The certainty that Mr. Kugel will never commit another crime.

3. The defendant's age and fragile state of health.

4. The nature and extent of Mr. Kugel's cooperation which resulted in the prosecutor's 5K.1 motion and letter.

5. David Kugel's persona and demeanor on the stand during his six days of trial testimony.

6. The essential nature of Mr. Kugel's cooperation as both a fact witness and a "go to" resource in regard to the securities industry.

7. Mr. Kugel's efforts in helping to recover money for the victims, while working with the Government and Bankruptcy Trustee.

8. The pain of knowing that his son awaits sentence on felony convictions, which in part, Mr. Kugel feels responsible for.

9. The defendant's anguish and disappointment in knowing the shame and pain this public ordeal has caused to his family and himself.

10. The quality of the character letters which describe the kind of person David is and will continue to be.

11. David Kugel's indispensible role as a son and caregiver to his elderly mother, devoted husband to his wife of 43 years and children and grandchildren with whom he has a special relationship.

12. The volunteer and charitable work which has been a vital part of his life before and after his arrest.

13. The recommendation of the Probation Department.

14. The fact that these crimes were an aberration in an otherwise flawless life.

15. As indicated by the Government the defendant's involvement in providing historical data ended in the early 1990's.

16. Mr. Kugel readily acknowledges committting mortgage fraud by his inaccuracies in his application. He had more than enough money in his investment account, by virtue of his deferred compensation, to have satisfied bank requirements.

17. Defendant is in a different catergory than most of the other defendant's in that the money he earned throughout his career was done by virtue of his skill as a trader.

18. The defendant agreed to forefeit 170 billion dollars which included the loss of the all assets and possessions which were

earned though legitimate trading, in that part of the Madoff business, which was totally separate and apart from the fraudulent advisory investment department.

19. The loss of his profession including all licenses in the securities industry.

20. All of the 3553 factors already discussed.

21. The continued opportunity to work and volunteer for the Fortune Society who consider David an extremely valuable assset in the wonderful work that they do in the rehabilitation of people who have been incarcerated. His efforts have been above and beyond, as is noted in the letters from the society.

22. The large number of individuals, for whom the defendant provided information resulting in convictions after trial as well as guilty pleas.

23. While not serving as an excuse for his illegal activity, the toxic environment created by Bernard Madoff, a person who the defendant looked up for his entire career and provided his first meaningful employment.

24. The knowledge and guilt that the defendant has experienced knowing that so many victims have suffered.

The object of this letter is to give this Court some insight into how and why Mr. Kugel finds himself before Your Honor, awaiting the pronouncement of sentence and what sentence given the varied sentencing options the Court has at its disposal best accomplishes the goals of a Sentencing Court. It is the defense's position that after the court considers all of the relevant factors of Mr. Kugel's situation, the law as it is today and the empirical studies done in this area that a sentence which has been requested would be reasonable herein.   This sentence would meet the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481 (2007).

In Gall the District Court sentenced the defendant to a period of probation. The Guidelines had suggested a sentence of from 30-37 months. The District Court there commented on the defendant's efforts at rehabilitation during the period of time between the commission of the crime and the sentence date. The Eighth Circuit determined that the sentence was

an "extraordinary" variance from the Guidelines, found that the sentence was not justified and remanded for re-sentence. The United States Supreme Court disagreed. Finding that the Circuit Court's analysis was constitutionally flawed, the Court reemphasized the position that the role of the Guidelines is merely advisory. As in Gall, the court here is presented with an individual who has been sufficiently punished and who will now begin to live a new chapter of his life.

## DEFENDANT'S REQUEST

The PSR is extremely instructive and should be used by the court when considering Mr. Kugel's character. Throughout this ordeal, Mr. Kugel has maintained a good relationship with his family members and friends. (Paragraph 46-48, page 10). It should be also noted that at the time of this arrest, Mr. Kugel immediately assisted the Government, it is noteworthy that Mr. Kugel's initial instinct was to atone for his mistakes and assist Law Enforcement even before he had the benefit of a cooperative agreement. Additionally, Mr. Kugel has no prior criminal history. For the reasons stated herein, the defendant respectfully requests the court impose the sentence recommended by Probation, which is time served followed by two years of supervised release.

The defendant respectfully reserves the right to raise additional issues at the time of sentencing.

Respectfully submitted,

Patrick Joyce

Cc: AUSA Randall Jackson
    PO Michele Greer- Bambrick





HOFSTRA NORTH SHORE-LIJ
SCHOOL of MEDICINE

Stanley Katz, M.D.,F.A.C.C.
Senior Vice President
  Cardiovascular Services

Chairman
  Department of Cardiology

Professor of Cardiology
Hofstra North Shore-LIJ
  School of Medicine

March 2, 2015

Dear Judge Swain,

I am writing a letter on behalf of David Kugel who will be before you for sentencing.

David had bypass surgery more than 10 years ago (triple vessel bypass surgery). About 5 years ago repeat angiography revealed one of the bypasses to be 100% occluded as well as one of his major arteries. He has been stable on medication.

He also suffers from anxiety and depression, has various dietary ailments and needs to be on a strict diet, has hypertension and hyperlipidemia.

Throughout my association with him over the past 10 years he has always demonstrated upright character, kindness and generosity and has financially supported the cardiac program at North Shore-LIJ Health System.

I wanted to make you aware of his medical problems as well as his community support for the hospital and hope that this will be taken into consideration during sentencing.

If you need any further information I would be happy to speak to you.

With kindness regards,

Stanley Katz, MD

# HAROLD H. WEISMAN, P.A.
## ATTORNEYS AT LAW

HAROLD H. WEISMAN

WENDI S. WEISMAN

SHARON BROWN

April 13, 2014

The Honorable Laura Taylor Swain
U.S. District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York , New York 10007

Re: David Kugel

Dear Judge Swain:

I respectfully submit this letter on behalf of David Kugel.  I was hired by Mr. Kugel in 2012 to represent both he and his wife, Phyllis in the sale of their home in Boca Raton, Florida.

Mr. Kugel knew that he was not going to be able to reap any benefit from the sale of his home from the beginning of the transaction.  Even with this knowledge, he fought very hard to obtain a Buyer at the top price.  He did not take the easy way out and just sell the property.  He was very involved in the transaction and made the sale quite a smooth transaction.

I was the attorney on the file for approximately a few months.  During that time, I had several conversations with my client regarding the reason for the sale of this home.  He expressed honestly what had transpired to me.  I found him to be a man of integrity during my dealings with him.

As I know that his sentencing is approaching, I spoke with Mr. Kugel to see how he was doing.  He mentioned to me that he had been volunteering his time at a wonderful organization and felt that he was excited about helping teach math to those unfortunately lacking those skills.  It was noted by me how he was reaching out to his community in a positive manner.

Page 2 of 2
Kugel

I request that you consider leniency during the sentencing phase for this man who is up in years, who has cooperated completely with the prosecution staff and who is committed to teaching and volunteering in his community. I would be happy to speak with you if you find that to be of any assistance. Thank you for the opportunity to present this letter on my client's behalf.

Very truly yours,
HAROLD H. WEISMAN, P.A.

Wendy S. Weisman, Esquire
WSW/lls

cc: Mr. David Kugel

 The Fortune Society
BUILDING PEOPLE, NOT PRISONS



April 21, 2015

BOARD OF DIRECTORS

Betty P. Rauch
Chairperson

Alphonzo Elder
Vice Chairperson

Mark Lebow
Secretary

Anne L. Gray
Treasurer

Shu'aib Abdur-Raheem
Alphonzo Albright
Yvette Brissett-Andre
E. Patricia Haversham-Brown
Monique Carter
Gerald D. Eber
Richard Eisner
John Forte
Martin F. Horn
Stephane Howze
Jean Jeremie
David A. Kochman
Dennis Kozlowski
Caroline Marshall
Nalika Nanayakkara
Roland Nicholson Jr.
Gabriel S. Oberfield
Fredrick J. Patrick
Stewart C. Raphael
Eric A. Seiff
Luke Weil
Ron Williams

JoAnne Page
President / CEO

David Rothenberg
Founder

ADVISORY BOARD

Roland Acevedo
Hon. Jeffrion Aubry
Hon. Yvette D. Clarke
Prof. Todd R. Clear
Esther Cohen
Hon. David Dinkins
Steven Donziger
Hon. Thomas K. Duane
Charles Dutton
Christine Ebersole
Mike Farrell
Richard Frankel
Robert Fullilove Ph. D.
Melanie Johnston
David Kaczynski
Eric Krebs
Hon. Velmanette Montgomery
Imam Dr. S.M. Muhammad
Eleanor Jackson Piel
Rossana Rosado
Susan Sarandon
Richard Stratton
Louise Tabbiner
Hon. Keith L. T. Wright

The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
United States Courthouse
500 Pearl St
NY, NY 10007-1312

Dear Judge Swain,

I serve *pro bono* as the Chief Compliance Officer of the Fortune Society, the oldest and largest social service agency in New York for the formerly incarcerated and other individuals involved in the criminal justice system, after a forty-five year career in information technology and finance.

I first met David Kugel two years ago when looking for a volunteer at Fortune who had numerate skills; at the time he was volunteering teaching math in Fortune's GED program and doing odd jobs for the finance department. Involving him in some basic auditing work for Medicaid billing, it quickly became apparent that he was very intelligent, diligent, and inventive: a real find among volunteers.

Over the months that I supervised his work, he became a mainstay of the auditing operation. Not only did he organize the work, but he developed several spreadsheets that improved the process. In addition, he extended the auditing back into medical charts and forward to tie into accounts receivable and payments, thus encompassing the entire process.

I recommended him for employment at Fortune, where he has worked to this day. He continues to increase his value to the organization.

David has always been candid with me about his career at Madoff and his involvement in Madoff's fraud. As I have come to know David, I realize that his participation was the result of gratitude, loyalty, and trust in Madoff – Madoff seems to have inspired these in a great many people. David realizes that he made a great error in judgement and truly regrets his actions.

The consequences of his crime have been devastating financially and psychologically for David and his family, including his mother, his wife, and his son and his son's family. I am impressed at David's ability to pick himself up from this self-induced tragedy and move his life forward in a useful way.

The founder of the Fortune Society, David Rothenberg, teaches that no one is the worst thing he has ever done.  This is profoundly true:  I am reminded of it every time I see David and others at the Fortune Society

I would ask for leniency for David who I believe can be a productive member of society.

Sincerely,

David Solomon





May 20, 2015

Dear Judge Swain

This letter is to certify that David Kugel has been volunteering at The Fortune
Society working as a Math Teacher/Tutor since November 2012. He has put in
over 730 hours and has been a positive influence and excellent teacher for our
students. We look forward to his continuing to volunteer here at Fortune. If there
are any questions or I can be of any further assistance please let me know.

Sincerely,

Benjamin Solotaire
Manager, Volunteer Services and Community Engagement
The Fortune Society
347 510 3645
bsolotaire@fortunesociety.org



The Fortune Society
*BUILDING PEOPLE, NOT PRISONS*



**BOARD OF DIRECTORS**

Betty P. Rauch
Chairperson

Alphonzo Elder
Vice Chairperson

Mark Lebow
Secretary

Anne L. Gray
Treasurer

Shu'aib Abdur-Raheem
Jared F. Bartie
Yvette Brissett-Andre
E. Patricia Haversham-Brown
Monique Carter
Gerald D. Eber
Richard Elsner
John Forte
Martin F. Horn
Stephane Howze
Jean Jeremie
Dennis Kozlowski
Caroline Marshall
Nalika Nanayakkara
Roland Nicholson Jr.
Gabriel S. Oberfield
Fredrick J. Patrick
Eric A. Seiff
Luke Weil
Ron Williams

JoAnne Page
President / CEO

David Rothenberg
Founder

**ADVISORY BOARD**

Roland Acevedo
Hon. Jeffrion Aubry
Hon. Yvette D. Clarke
Prof. Todd R. Clear
Esther Cohen
Hon. David Dinkins
Steven Donziger
Hon. Thomas K. Duane
Charles Dutton
Christine Ebersole
Mike Farrell
Richard Frankel
Robert Fullilove Ph. D.
Melanie Johnston
David Kaczynski
Eric Krebs
Hon. Velmanette Montgomery
Imam Dr. S.M. Muhammad
Eleanor Jackson Piel
Rossana Rosado
Susan Sarandon
Richard Stratton
Louise Tabbiner
Hon. Keith L. T. Wright

Tashima Lessey
Education Director
The Fortune Society
29-76 Northern Blvd.
Long Island City, NY 11101

December 29, 2014

Dear Judge Swain,

My name is Tashima Lessey, Education Director at the Fortune Society, a multi-service non-profit organization which helps people who participate in programs as an alternative to incarceration or have been released after a period of incarceration. Students stay in the education program to improve their reading, writing, and math skills for various reasons: they may want to get a job, obtain a better job, or receive their high school equivalency diploma in order to achieve other goals.

David Kugel has volunteered as a teacher for the last 1½ years. He has been devoted to helping his students and has helped our program greatly. He co-tutored a math class with me twice a week until last October when the class was dissolved and students placed in other classes, was flexible about meeting with me to plan for classes, and has volunteered to help out in the afternoon tutoring group since then.

I have found David to be a very conscientious and caring individual who has been generous with his time. Our students appreciate his efforts and many students feel like they've improved their math ability through David's guidance.

I would respectfully ask your honor to consider the positive impact David's had on the program and our students. He is a sincere and decent person who I believe could continue making a positive impact on the program in the future.

Thank you for considering this letter.

Sincerely,

Tashima Lessey

# BakerHostetler

Baker&Hostetler LLP

Irving H. Picard

May 18, 2015

**VIA HAND DELIVERY**

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *David Kugel Sentencing: United States v. David L. Kugel, 10-cr-00228-LTS*

Dear Judge Swain:

I am the court-appointed trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA") and the substantively consolidated estate of Bernard L. Madoff ("Madoff"). I write to you in connection with this Court's scheduled sentencing of Mr. David Kugel on May 27, 2015.

As Trustee, I and my counsel are currently engaged in the investigation of the BLMIS fraud to recover assets and distribute these funds to investors who were victims of Madoff's Ponzi scheme and suffered significant losses. Mr. Kugel has been voluntarily cooperating with the ongoing investigation and providing helpful information that will assist in the multitude of pending avoidance actions seeking to recover fraudulent transfers and redistribute the funds to the victims of the scheme. Mr. Kugel has been forthright and candid about his knowledge of Madoff, BLMIS, and related entities.

I respectfully share Mr. Kugel's cooperation with this Court for consideration in connection with his sentencing.

Respectfully,

Irving H. Picard

Atlanta   Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Denver
Houston   Los Angeles   New York   Orlando   Philadelphia   Seattle   Washington, DC



The Fortune Society
*BUILDING PEOPLE, NOT PRISONS*



**BOARD OF DIRECTORS**

Betty P. Rauch
*Chairperson*

Alphonzo Elder
*Vice Chairperson*

Mark Lebow
*Secretary*

Anna L. Gray
*Treasurer*

Shu'aib Abdur-Raheem
Alphonzo Albright
Yvette Brissett-Andre
E. Patricia Haversham-Brown
Monique Carter
Gerald D. Eber
Richard Eisner
John Forte
Martin F. Horn
Stephane Howze
Jean Jeremie
David A. Kochman
Dennis Kozlowski
Caroline Marshall
Nalika Nanayakkara
Roland Nicholson Jr.
Gabriel S. Oberfield
Fredrick J. Patrick
Stewart C. Raphael
Eric A. Seiff
Luke Weil
Ron Williams

JoAnne Page
*President / CEO*

David Rothenberg
*Founder*

**ADVISORY BOARD**

Roland Acevedo
Hon. Jeffrion Aubry
Hon. Yvette D. Clarke
Prof. Todd R. Clear
Esther Cohen
Hon. David Dinkins
Steven Donziger
Hon. Thomas K. Duane
Charles Dutton
Christine Ebersole
Mike Farrell
Richard Frankel
Robert Fullilove Ph. D.
Melanie Johnston
David Kaczynski
Eric Krebs
Hon. Velmanette Montgomery
Imam Dr. S.M. Muhammad
Eleanor Jackson Piel
Rossana Rosado
Susan Sarandon
Richard Stratton
Louise Tabbiner
Hon. Keith L. T. Wright

April 20, 2015

The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Swain,

I am writing this letter for your Honor's consideration on the sentencing of Mr. David Kugel. I first met Mr. Kugel when he came to The Fortune Society as a volunteer in November 2012. He was hired as a part time employee by Fortune in July 2013. I am writing in my capacity as President and Chief Executive Officer of The Fortune Society. To provide context for this letter, it might be helpful to provide some background on the Fortune Society and myself.

Founded in 1967, the Fortune Society annually provides approximately 5000 former prisoners and high-risk youth with a broad range of services including alternatives to incarceration, an in-house school, drug treatment, housing, HIV services and help in finding and holding employment. We also provide outreach and HIV information to an additional 8000 prisoners a year. Our nationally recognized services help our clients to build new lives free of substance abuse and further criminal justice involvement. When we are successful, everyone benefits including our clients, their families and the communities to which they return after incarceration.

I am a graduate of Yale Law School and have headed The Fortune Society since 1989. My background in criminal justice goes back to 1972, and I speak and write and lecture nationally on criminal justice and re-entry issues My statements in this letter are based both on over 40 years of work with men and women involved in criminal justice.

David Kugel first came to The Fortune Society to volunteer as a tutor in our Education Department. Mr. Kugel showed nothing but commitment in working with our clients and we soon realized he had more to offer. In July 2013 we hired him part time to help us with our Internal Medicaid Quality Control. He does audits of our case and electronic files making sure we are in compliance at all times. He also reconciles what has been billed and what has not been paid. If there is an issue he digs in deep to discover why, knowing how important it is to us as a nonprofit that we are in compliance and receive full payment. While he has been working with us, David has still kept his commitment to the Education Department and continues to tutor math one day a week.

From my experience of over forty years in evaluating people who have engaged in criminal conduct, and based on my observation of David's extraordinary demonstration of work habits and integrity in his job with Fortune, I recommend that David be considered for a non-incarceratory sentence. He has committed a crime that has already cost him dearly in terms of loss of income, damage to his professional reputation, and damage to those whom he cares most about It is exceedingly unlikely that he will be able to return to the career in which he is trained and experiences, so his crime will have a lifetime impact on his career opportunities and earning capacity.

At Fortune, we work strongly from a concept of restorative justice. It is my hope that David will be allowed to continue to work and be someone who contributes substantially to his family and community and not be given a prison sentence.

Thank you for your consideration of this letter and please do not hesitate to call if I can provide further information.

Sincerely yours,

JoAnne Page, Esq.
President and CEO

April 12, 2015

Honorable Laura Taylor Swain
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Swain:

My name is Phyllis Kugel and I would like to tell you about my husband David. He is a very kind, warm and quiet man. We have a very strong and loving marriage. We are a very close family and he is always there for me, our children, our grandchildren and our extended family.

David was the kind of father that attended every school function, did homework with our children and encouraged them to do the best in anything they chose to do. David is an incredible grandfather to our two grandchildren. He does homework, reads to them and builds all kinds of projects with them. Our 8 year old grandson has a learning disability and he is extremely close to David. David works with him and when this child does well on a test, the first person he calls is his "PopPop".

David, with his sister are also the major caregivers to his 96 year old mother. She is legally blind, deaf and has leukemia. She is not fully aware of his situation. However she would be devastated if David were not around to take care of the decisions that have to be made about her care and well being.

David is also a very charitable man. He believes in giving back to the community. We found out the Hebrew school our children went to needed a water fountain for the children. David and I donated one, plus the cost of a plumber to install it. When our temple needed new prayer shawls, David and I donated them. In 2004 David had triple bypass surgery at North shore-LIJ hospital. To thank the hospital for their wonderful care, David and I became involved in the Cardiac Care Foundation.

David is a kind and good man. He always looks for the good in people. Sometimes this makes him a little naïve in judging people, because he expects them to be what they appear to be. The Madoff situation has given him great grief and caused him to have terrible remorse and sadness because it has caused harm to so many people, not just the harm it cause to his own family.

David Kugel is basically a good and decent person. I hope you take this into account when you consider his sentence. Thank you.

Phyllis Kugel
Phyllis Kugel

Ms. Judi Kugel



Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Swain:

I am writing to you so that you can understand the deep emotional connection I
have with my wonderful brother, David Kugel. Very often I meet people and they
don't have a good relationship with their siblings. I can't imagine that ever
happening with my brother. He is the brother that has always been there for me in
everything I've needed throughout my life. I'm a single professional woman. I
currently teach educational courses at a State University and I'm a retired New York
City teacher.

Throughout my life my brother is the one that has always been there for me
physically and emotionally. He is always the one that has helped me to make
important decisions throughout my life. Helping me select every car I've ever
owned, deciding about when to retire, whether I should I buy an apartment...these
are just a few of the many examples. He was the first call I made when I was in a
serious car collision. He was there when I went to the hospital and took me home to
his house to recover. His humor, compassion, and love are one of the things that
have made and continue to make my life happy. I have a load of friends but my
family and especially my brother, David, is the most important part of my life.

My mother is 96 years old and has had an incredibly difficult past few years. She had
a mini-stroke two years ago, became completely blind in one eye, is legally blind in
the other and was hospitalized for pneumonia. Last year she had to go to the
hospital twice and it was my brother who was there making the medical decisions
for my mother. She also has leukemia and C.O.P.D. She fell twice and had bleeding in
the brain. She fell again, which caused a fractured vertebra. Although she has
recovered from her falls, her balance is awful. My brother David has been a primary
caregiver and decision maker for our mother.

While she is capable mentally, our mother is not aware of the legal problems my
brother currently is going through. I can't even imagine telling her if my brother is
sentenced to any time incarcerated. I find it incredibly hard to even write those
words. She survived the falls and other ailments but she couldn't survive this news.
She needs constant care going to doctors and making medical decisions for her care.
She is not bed ridden and her greatest joy is getting together often with her children

and grandchildren. My mother desperately needs my brother, David, to be there for her. I need him also to be there for me.

Therefore, I ask you to please consider all of the above factors in sentencing my brother.

Respectfully yours,

Judi Kugel

Heather Kugel


Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Honorable Judge Swain:

I am David Kugel's daughter so I have the rare opportunity of knowing him in a way that few can, through the thousands of little moments that make up a person. I have yet to meet anyone who equals his humbleness, sense of fairness, generosity and kindness. My Dad's sense of identity is in seeing his family and loved ones happy.

Growing up, I knew that our family was the most important thing in the world to my Dad. He and my mom's relationship has set an extremely high bar and an environment of stability and love. In over 43 years of marriage they are so supportive of each other, continuing to bring out each other's strengths. I can count on one hand the number of nights they have ever spent apart. For myself, I truly can't think of any decisions in my life, big or small, that my Dad hasn't played an active part in, from how I resolved problems in my relationships with friends, to where I went to school and what I studied, to how I chose where I would live, etc. His involvement drove me to work harder in everything I did. His faith in my abilities pushed me to never want to let him down. I knew that making him proud meant doing my best and acting with respect. When I wanted to play soccer and the only neighborhood team was an all boys team, it was my Dad who got me on the team, went to every game, practiced with me and helped me deal with the boys when they teased me. It was the same when I wanted to study Math. He taught me what it meant to maintain a strong work ethic and to work hard for what I wanted to accomplish, even when it wasn't easy.

In his own quiet way, this guidance extended to many of my friends as well. Over the years as he got to know my friends and they shared dilemmas with him, I saw Dad offer up viewpoints and generously offer to spend as much time as they needed to talk it through or practice conversations until they felt they were prepared. He was proud in their accomplishments and was genuinely happy to see them succeed too. As a result, my parents were invited to many of my friends' life events. It was at one such wedding, that he actually saved someone's life. He was the only one who noticed my friend's mother was choking and he performed the Heimlich, which he had recently learned after his quadruple bypass surgery. She wanted to tell everyone, but he asked that she not mention it. He didn't want it take away from the Bridal couple's day.

My Dad is an extremely kind man. Over the years, when we've visited friends with small children, no matter what the initial disclaimer (e.g. shy, doesn't like adults), within an hour or so, said child was always attached to my Dad while they read, talked

about school or played games. I see this most clearly with his grandchildren, my nephew and niece. His whole soul lights up when he is with them.

I hope that when you are making your decisions about my Dad, David, you take into consideration the quality of father, husband, grandfather and friend he is to his loved ones and how much we all need him on a daily basis.

Sincerely,

*Heather Kugel*

Heather Kugel



**MARTIN A. KUGEL, D.D.S., F.A.G.D.**                     *General Dentistry*



April 20, 2015

Honorable Laura Taylor Swain
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Swain:

I am David Kugel's younger brother, Martin. Throughout my life, my brother has been a role model for me. He has always been honest and helpful to myself and our family. He was extremely helpful in my goal of becoming a dentist and establishing a successful practice. When I was looking to buy a practice, after spending three years as a Lt. Commander in the U. S. Public health service, my brother spent endless hours evaluating and going with me to look at potential practices to buy. After a long search we found the practice I still have. David walked in, turned to me and said this is it. He negotiated everything, price, rent, and the transition period. Having limit funds his help to obtain affordable terms was invaluable. Without his help I do not believe that I would have achieved the same success in my profession. This is only one example of many how David extends himself for me, our family and friends.

In addition to taking care of his family, David provides much of the care for our frail 96 year old mother. I live out of state and I appreciate and I'm thankful for David's care of our mother. She needs round the clock care and coordination of many doctor visits. He lovingly watches over and is in contact with her daily to keep our mother in as good as health as possible.

During David's heart illness, he had to make a difficult decision. After hearing his options, I told David, I knew him better than anybody else. I knew deep down what David's best option was for him.

Knowing David for 66 years he would never do anything against the best interest of his family. Please treat David with the same understanding and compassion which David has always exhibited to others.

*Martin A. Kugel, D.D.S.*

April 14, 2015



Honorable Laura Taylor Swain
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Swain:

I am writing this letter at the request of David Kugel, a
defendant in your Court, who I have known for over 35 years.  My
relationship with David was through my sister, Sandra Kassan.
David and his wife Phyllis were my older sister's neighbors in
Port Washington and over the years they became very close
friends.  Though my sister and her family eventually moved away,
they remained extremely close with Phyllis and David and their
families frequently traveled together as they both had children
of similar ages who shared school breaks.

As a younger sibling, my parents, younger brother and I
spent significant amounts of time at my sister's home with her
family and that is how I first became acquainted with the Kugels.
At all times, it was readily apparent that David and Phyllis were
devoted parents, great neighbors and wonderful friends.  They not
only had a great sense of community, but good family values.
Above all else, they understood the importance of family and
friends and stood by my family through the death of both my
parents and of my beautiful sister, Sandi.

My sister was diagnosed with pancreatic cancer in 2002.  She
underwent intensive treatment and surgery, but ultimately
succumbed to the disease.   Throughout my sister's battle with
cancer, David was a sincere friend, always ready to do whatever
could be done to support her and her family.  He and his wife not
only offered moral and emotional support, but gave of themselves
on every level.  David Kugel not only frequently visited my

sister, but regularly called her two children and literally held my brother-in-law up through her illness and eventual death.

Reconciling the father, the friend and the man I know with the person who was involved in a financial scam which defrauded innocent people and involved millions or even billions of dollars is inconceivable to me and I write this letter with sadness for the man who gave so much of himself to my sister during her illness.   While I cannot reconcile David Kugel's criminal actions while working with Bernard Maddoff with the man I have known for so long, I can vouch for the fact that the David Kugel I knew was a man of sincere and sustained loyalty in sickness and in health and a true friend.   These are important qualities and speak volumes about his character and should be given due consideration by this Court.

Yours truly,

JOAN GUDESBLATT LAMB



April 6, 2015

The Honorable Laura Taylor Swain

United States District Judge

Daniel Patrick Moynihan

United States Court House

500 Pearl Street

New York, NY 10007-1312

Dear Judge Swain,

We are writing in regard to the case and sentencing of David Kugel. We understand the charges against him but we would like to provide you with some personal information about the David Kugel we know.  We have known David for more than 45 years. Our families have enjoyed a wonderful relationship over that time. David and his wife Phyllis are the godparents to one of our children.

During our many years of friendship David has been a caring and loving parent to his children and special "uncle" to ours. Early in our marriage I developed a major health issue. At that time I was hospitalized and could not make our son's second birthday. David made sure it would be celebrated by generously hosting the party at his home. To this day we enjoy the event through our family pictures and stories. This is only one example of his kindness and compassion.

If we needed advice David was always willing to help guide us with his experience.   Sometimes it is so important to have a trusted family member's opinion. We have always known David to be honorable and truly interested in his family and friend's well-being.

We hope you will give thought to how David has conducted his life as the worthy person we know him to be.  Sometimes even honorable people make mistakes. Please give consideration to his fine conduct and commitment to correct any past errors in judgement.

Sincerely,

Marjorie and Stephen Bromberg

CHARLES HOLZBERG

LICENSED INSURANCE CONSULTANT



April 21, 2015

Honorable Laura Taylor Swain
US District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10037

Honorable Judge Swain:

David Kugel and I met some 25 years ago. During this past quarter century we both have faced numerous ups and downs, physically, financially and emotionally. Throughout this time, David has always been there for me and my family, ready to listen patiently when I needed a sounding board, or to sit with my wife and me while I underwent surgery and recovered.

My respect for David has continued to grow as I watched his actions as a family man. Without question his family is his reason for being.  Watching his loving interactions with his children, could serve as a model for good parenting. From their earliest childhood, through making decisions as to which colleges they would attend, and on through their adulthood, David has always been a daily direct presence and force in their lives.

Additionally, David's devotion to his grandchildren is unparalleled. Fortunately, they live close by and spend a great deal of quality time together, sharing meals and experiences such as going to the library, mini golf, zoo, and museums. He is a marvelous grandpa.

Over the years, I have come to use David as a sounding board when confronted by a problem he has the patience to listen and come to a thoughtful conclusion based on "what's the right thing to do". He is a caring man. David was with a mutual acquaintance as he suffered a heart attack. David saw to it that an ambulance was called and followed it to the hospital. He waited with our friend until the family arrived and then quietly slipped away, once he saw that all was under control.

David was the first to say "yes" when asked to work for a charity event or to sponsor a participant working for a charitable cause.

### CHARLES HOLZBERG

LICENSED INSURANCE CONSULTANT



Continued page 2

During this current difficult period, David continued to conduct himself with dignity and to be a pillar of strength for his family. Because of his strength of character, I did not hesitate for one moment when David asked me to sign his bond guarantee.

I am proud to call him my friend.

Very truly yours,

Charles Holzberg

**Continental Kraft Corp.**

3/30/2015

Honorable Judge Laura Taylor Swain

United States District Judge

United States Courthouse

500 Pearl Street

NY, NY 10007

To Judge Swain,

My name is David Landau, President & CEO of Continental Kraft Corp, a distributor in the Corrugated Packaging Indsutry.

David Kugel has been a friend of mine for the past 20 years and, I am aware of his legal situation with regard to the Madoff case.

Let me first say that in the 2 decades of our friendship, David has been a loyal, caring and charitable friend. As one who is deeply involved in charity work on Long Island as a trustee for Family & Childrens Association, I have known about, and appreciated David's efforts and generosity in supporting my charity and others.

I am also aware of the excellent contribution he has made to a nonprofit in the last few years during this period of turmoil in his life.

What has surprised me, given David's character & caring for others, is the situation in which he has found himself. I believe that David is devastated by the consequences of the Madoff actions not only for his family, but more importantly for the scores of lives that have been so negatively impacted.

David has much to give back to society as he has been doing so effectively in the last few years. Hopefully this can be taken into account as you move forward with your decision.

Thank you for your consideration.

Sincerely,

David Landau



Honorable Laura Taylor Swain
Judge, United States District Court For The Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Dear Judge Swain:

We are writing to you on behalf of our dear friend, David Kugel. I have known David since 1971 and my wife Barbara and David's wife Phyllis have been best of friends for the past 64 years. We have always known David to be a compassionate, moral and caring individual.

We are aware of the dilemma that he now faces, and believe that his behavior resulting in this case, is an aberration, and not the David we know. We have always known him to be a humble man. David goes out of his way and cares about the well being of others, both family and friends. He is a wonderful husband, father and grandfather. He is a devoted son to his aged mother Ruth, who is legally blind as well as deaf.

Throughout his life, David shouldered tremendous family responsibilities beyond the realm of his immediate family. He became the financial caregiver of his uncle, a diabetic who was in poor health.  He continued this support until his uncle's demise, never calling to the attention of anyone that he shouldered the responsibility.

Another instance of David's generosity concerns a cousin who came to him in need of legal assistance. David retained the attorney. When he found out that the cousin couldn't pay the attorney fees, David paid for the attorney out of his own pocket, anonymously, as to not embarrass his cousin. This is the kind of person that David Kugel is; modest, kind, generous to a fault.

Our families have been close since our marriages. We have attended each others' life cycle events and always celebrate the High Holidays and Passover together. My late mother in law, Tessie was always a favorite of David. She was always asking him for advice, and even when he was busy, he always found the time to return her call and talk to her.

In conclusion, we ask your Honor to temper justice with mercy. Thank you very much for your kind consideration.

Very truly yours,

Robert S. Hordos

Barbara Hordos